UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESUS CHURCH MINISTRIES
OF TAMPA INC.,

     Plaintiff,

vs.                                                     Case No. 21-cv-02827

OHIO SECURITY INSURANCE
COMPANY,

     Defendant.

_____/

## DEFENDANT OHIO SECURITY INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT AGAINST PLAINTIFF JESUS CHURCH MINISTRIES OF TAMPA INC. AND SUPPORTING MEMORANDUM OF LAW

Defendant Ohio Security Insurance Company ("Ohio Security") moves for final summary judgment under Fed.R.Civ.P. 56 against Plaintiff Jesus Church Ministries of Tampa Inc. ("Plaintiff"), and states:

### I.

### SUMMARY

Plaintiff cannot prove that Ohio Security breached the insurance policy by not paying for replacement cost because Ohio Security does not owe replacement cost in the absence of repairs or replacements to damaged property. The only claim Plaintiff presented to Ohio Security pre-lawsuit is a claim for replacement cost. Under Florida law, and this insurance policy,

Plaintiff must actually repair or replace damaged property before it can establish any right to be indemnified for replacement cost. Plaintiff has not presented any competent, substantial evidence supporting that it actually spent money to repair or replace damaged property after the loss in the amount of $470,543.61—the amount of its replacement cost estimate.

An insurance policy is a contract of indemnity. Under this commercial property insurance policy, Plaintiff can seek indemnification for the actual cash value of the covered loss, or indemnification for what it paid for repairs or replacements to damaged property. But Plaintiff has not made an actual cash value claim, or completed repairs or replacements to the building.

## II.

## <u>STATEMENT OF UNDISPUTED FACTS</u>

1.     This case involves a property insurance claim arising from a windstorm on November 15, 2020.[1]

2.     Ohio Security issued a commercial property insurance policy ("Policy") to Plaintiff for property located in Tampa, Florida.[2]

3.     A 5 percent windstorm deductible of $25,317.00 applies to the Building Coverage and building listed on the Policy.[3]

---

[1] ECF No. 1-1, pg. 5 of 6 at ¶12; ECF No. 21-5, Verified answers to first interrogatories at numbers 17 and 18.
[2] ECF No. 21-1, Declaration of Marie Pacheco at ¶4 and Exhibit 1.
[3] ECF No. 1-7 at pg. 11 of 199 and pg. 136 of 199; ECF No. 21-1 at ¶5.

4.     Plaintiff reported a claim to Ohio Security for alleged damages to the building caused by a windstorm.[4]

5.     Pre-lawsuit, Plaintiff gave Ohio Security a replacement cost estimate prepared by Noble Public Adjusting Group ("Noble") for $470,543.61. The estimate includes $436,261.61 replacement cost for the building and $34,282.00 replacement cost for loss of use.[5]

6.     The estimate produced by Plaintiff to Ohio Security does not calculate actual cash value or depreciation for the building.[6]

7.     Ohio Security extended partial coverage for the claim under the Policy.[7]

8.     Pre-lawsuit, Ohio Security paid Plaintiff nothing for the claim because the covered wind damages to the roof did not exceed the Policy's windstorm deductible.[8]

9.     Pre-lawsuit, Plaintiff never quantified or presented an actual cash value claim to Ohio Security.[9]

10.    Plaintiff sued Ohio Security for breach of contract arising from the loss.[10]

---

[4] ECF No. 21-1 at ¶6.
[5] ECF No. 1-8 at pgs. 15-17 of 24; ECF No. 21-1 at ¶7. The estimate calls the building a "Dwelling." But this is not a homeowner's claim.
[6] ECF No. 21-1 at ¶8.
[7] *Id*. at ¶9.
[8] *Id*. at ¶10.
[9] *Id*. at ¶11.

11.     Plaintiff alleges that Ohio Security "breached the Policy by denying coverage for the loss and failing or refusing to pay all benefits due and owing which Plaintiff is entitled to under the Policy."[11]

12.     Plaintiff contends further that it has suffered damages as a result of not having benefits paid pursuant to the insurance Policy.[12]

13.     Plaintiff served its Rule 26(a)(1) disclosure on Ohio Security.[13]

14.     In the computation of damages section, Plaintiff claims total damages of $470,543.61. Plaintiff claims $436,261.61 to "Repair damage to property based upon Noble Estimate" and $34,282.00 for "Loss of Use/Business Interruption."[14]

15.     Plaintiff has not spent $470,543.61 to repair or replace damaged property.

16.     Plaintiff has not produced any documents, invoices, receipts, or payment records supporting that it has spent $470,543.61 to repair or replace damaged property.

17.     Plaintiff has not spent money to repair or replace damaged property in excess of the Policy's $25,317.00 windstorm deductible.

---

[10] ECF No. 1-1, pg. 5 of 6 at ¶6.
[11] *Id.*, pg. 6 of 6 at ¶16.
[12] *Id.* at ¶18.
[13] ECF No. 21-2, Plaintiff's Rule 26(a)(1) disclosure.
[14] *Id.* at pg. 3 of 4. The amount claimed by Plaintiff is based on the Noble estimate.

18.    The Policy provides coverage for replacement cost if, and only if, damaged property is actually repaired or replaced. The Policy's "Optional Coverages" provision in the Building and Personal Property Coverage Form replaces actual cash value with replacement cost. It states:

**BUILDING AND PERSONAL
PROPERTY COVERAGE FORM**[15]

\*\*\*

**G.    Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.[16]

\*\*\*

**3.    Replacement Cost**

a.    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.[17]

\*\*\*

19.    Plaintiff may elect to make a claim on an actual cash value or replacement cost basis. But Plaintiff cannot recover replacement cost, and

---

[15] ECF No. 1-7 at pg. 115 of 199.

[16] The Policy's Declarations list replacement cost for the Building Coverage. ECF No. 1-7 at pg. 11 of 199. The Policy's Optional Coverages provision starts on ECF No. 1-7 at pg. 128 of 199.

[17] *Id*. at pg. 128 of 199.

Ohio Security has no obligation to pay replacement cost, until the damaged property is actually repaired or replaced. The Policy provisions state:

    **c.**    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.**    We will not pay on a replacement cost basis for any loss or damage:

        **(1)**    Until the lost or damaged property is actually repaired or replaced; and

        **(2)**    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

***

    **e.**    We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3),** subject of **f.** below:

        **(1)**    The Limit of Insurance applicable to the lost or damaged property;

        **(2)**    The cost to replace the lost or damaged property with other property:

            **(a)**    Of comparable material and quality; and

            **(b)**    Used for the same purpose; or

6

> **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.
>
> ***
>
> **f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.[18]
>
> ***

20. Ohio Security served Plaintiff with written discovery: interrogatories[19] and requests for production.[20]

21. Plaintiff's verified interrogatory answers admit it has not spent any amount on repairs in excess of the Policy's windstorm deductible of $25,317.00. Plaintiff repaired a few ceiling tiles for less than $100.[21]

22. Plaintiff's responses to Ohio Security's first request for production admit it has no documents related to repairs or replacements of damaged property.[22] Plaintiff admits it has no documents showing the amount of money that Plaintiff has spent to repair or replace damaged property related to the loss.[23]

---

[18] *Id.* at pg. 129 of 199.
[19] ECF No. 21-3, Ohio Security's first interrogatories to Plaintiff.
[20] ECF No. 21-4, Ohio Security's first request for production to Plaintiff.
[21] ECF No. 21-5, Answers to first interrogatories at numbers 7 and 12.
[22] ECF No. 21-6, Responses to first request for production at number 4.
[23] ECF No. 21-6, Responses to first request for production at number 5.

## III.

## ARGUMENT

### A.    Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

### B.    Plaintiff must repair or replace damaged property to recover replacement cost under this Policy.

The Policy requires Plaintiff to repair or replace damaged property in order to recover replacement cost. The Policy's replacement cost provision is clear and unambiguous: Ohio Security is not required to pay on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced.[24]

---

[24] ECF No. 1-7 at pg. 129 of 199, Policy provision G.3.d.(1).

No disputed issue of material fact exists on replacement cost. Plaintiff is not entitled to replacement cost because it has not repaired or replaced damaged property for the amount claimed in the Noble estimate. Plaintiff has put forth no competent, substantial evidence of any repairs or replacements to the building based on its replacement cost estimate and replacement cost claim for $470,543.61. As a matter of law, Plaintiff cannot prove entitlement to indemnity under the Policy's replacement cost coverage because it has not completed actual repairs or replacements to damaged property, as recommended in its replacement cost estimate from Noble. Plaintiff has spent less than $100 to repair a few ceiling tiles, which does not exceed the Policy's windstorm deductible of $25,317.00.

Plaintiff has no right to payment from Ohio Security for anticipated repair costs that have not been completed yet. The Policy does not permit payments up front for replacement cost in the absence of repairs or replacements to damaged property. The Policy contains no allowances for advance payments to fund repairs. *See Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 395 Fed.Appx. 659, 662 (11th Cir., Sept. 14, 2010). Neither this Policy, nor Florida law, requires Ohio Security to fund repairs before Plaintiff completes the repairs. *Id.* at 664.

The Policy provides two types of indemnity insurance benefits for loss or damage to covered property: replacement cost and actual cash value.

"Replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property. It is insurance on a property's depreciation." *State Farm Fire & Casualty Co. v. Patrick*, 647 So.2d 983, 984 (Fla. 3d DCA 1994) (reversing trial court order ad finding that insurer was liable only for the amount the insured actually spent to repair or replace the lost or damaged property).

Replacement cost claims simply do not "arise until the repair or replacement has been completed." *See Ceballo v. Citizens Prop. Ins. Corp.*, 967 So.2d 811, 815 (Fla. 2007). "Courts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed." *Patrick*, 647 So.2d at 983; *see also, FIGA v. Somerset Homeowners Ass'n, Inc.*, 83 So.3d 850, 852 (Fla. 4th DCA 2011) (holding that insured could not recover replacement cost until it actually repaired or replaced buildings and rejecting insured's prevention of performance argument).

The Eleventh Circuit directly addressed replacement cost in the context of a hurricane claim in the *Buckley Towers* decision. There, the Court held that the insured had no right to recover replacement cost under the policy where the insurance contract clearly required that the insured make actual repairs before seeking replacement cost. *See Buckley Towers*, 395 Fed.Appx. at 661. The insurance contract unambiguously required the insured to repair

10

its property before receiving replacement cost. *Id*. at 662. The record undeniably established that the insured never completed repairs; and therefore, the insured was barred from recovering replacement cost under the plain terms of the contract. *Id*. The same is true here.

Moreover, allowing an insured to claim replacement cost without repairing or replacing damaged property entirely removes the insured's obligations under the replacement cost section of the contract. *Id*. at 663. But it is not a defense to say that it would be costly for the insured to comply with the insurance contract as written. *Id*. (rejecting insured's argument relying on the doctrine of prevention of performance because that would impermissibly rewrite the insurance contract).

Several Florida federal district courts have followed *Buckley Towers* and concluded that an insurer does not owe replacement cost until an insured repairs or replaces damaged property. *See Metal Products Co., LLC v. Ohio Security Ins. Co.*, 2021 WL 1345525, at *2 (N.D. Fla., Apr. 12, 2021), affirmed in 2022 WL 104618 (11th Cir., Jan. 11, 2022) (affirming summary judgment for insurer and finding that insurer did not breach its contract with insured based on replacement cost claim); *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 2020 WL 1557887, at *2 (M.D. Fla., Apr. 1, 2020) affirmed in 843 Fed.Appx. 189 (11th Cir. 2021) (affirming summary judgment for insurer and holding that contractor was not entitled to payment for replacement cost

value for repairs "until loss or damaged property [was] actually repaired or replaced"); *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, 2021 WL 877560 at *7 (M.D. Fla., March 9, 2021) (granting summary judgment for insurer and finding that plaintiff may not recover replacement cost because the policy's "until and unless" provision is plain and unambiguous).[25]

Here, there is no disputed issue of material fact on entitlement to replacement cost coverage under the Policy. Plaintiff is not entitled to replacement cost. Plaintiff demands replacement cost under the Policy based on the Noble estimate. But two material facts are not in dispute: (1) the Noble estimate only calculates replacement cost; and (2) Plaintiff has not completed the repairs or replacements to damaged property recommended in the estimate. Plaintiff cannot change the nature of its demand for payment based on replacement cost in opposition to summary judgment. *See Metal Products*, 2022 WL 104618 *3 (discussing that insured could not change the

---

[25] Other Florida federal district courts agree: Replacement cost is not owed until the insured repairs or replaces damaged property. *See Oriole Gardens Condominium Ass'n I v. Aspen Spec. Ins. Co.*, 875 F.Supp.2d 1379, 1385 (S.D. Fla. 2012); *Palm Bay Yacht Club Condominium Ass'n, Inc. v. QBE Insurance Corp.*, 2012 WL 13012457, at *5 (S.D. Fla., May 8, 2012); *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, 2011 WL 6754063, at *11 (S.D. Fla., Dec. 22, 2011); *Los Palacios II Condo. Ass'n, Inc. v. Aspen Spec. Ins. Co.*, 2011 WL 13100234, at *7 (S.D. Fla., Sept. 6, 2011); *see also, Langhorne v. Fireman's Fund Ins. Co.*, 432 F.Supp.2d 1274, 1279 (N.D. Fla. 2006) (summary judgment for insurer and concluding insurer had no obligation to pay insured under policy's extended replacement cost endorsement because insured did not actually expend any amount to repair, rebuild, or replace the property).

nature of its demand for payment by asserting, in its opposition to summary judgment, that its estimate "contain[ed] both ACV and RCV values").[26] As a matter of law, this Court should grant final summary judgment in favor of Ohio Security on Plaintiff's replacement cost claim.

### C.    Ohio Security did not breach the Policy.

Ohio Security did not breach the Policy because nothing is owed on a replacement cost basis. The fundamental issue in this breach of contract action is whether Ohio Security breached the Policy. But Plaintiff cannot prove its breach of contract action. Plaintiff sued Ohio Security for breach of contract without requisite facts supporting a material breach and damages.

Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). A colorable breach of contract claim requires a material breach of a valid contract and damages. *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F.Supp.3d 1074, 1079 (M.D. Fla. 2019). "All elements of a cause of action must exist and be complete before an

---

[26] Under the Policy, Plaintiff may "elect" a claim for actual cash value instead of replacement cost. Two remedies coexist: one based on replacement cost and another based on actual cash value. The remedies are inconsistent because one remedy (replacement cost) requires repairs and the other remedy (actual cash value) does not. But, to elect an actual cash value claim, Plaintiff must make a claim based on actual cash value. Plaintiff's adoption of replacement cost as its remedy waives the right to elect actual cash value. The election of remedies doctrine bars any claim for actual cash value. *See Barbe v. Villeneuve*, 505 So.2d 1331, 1332-34 (Fla. 1987).

action may properly be commenced." *Shuck v. Bank of American, N.A.*, 862 So.2d 20, 24 (Fla. 2d DCA 2003); *see also Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So.2d 607, 610 (Fla. 4th DCA 1975); *Hasam Realty Corp. v. Dade County*, 178 So.2d 747, 748 (Fla. 3d DCA 1965).

Here, nothing is owed on a replacement cost basis because Plaintiff has not repaired or replaced damaged property recommended in the Noble estimate. Plaintiff is barred from recovering replacement cost under the Policy because the record undeniably establishes that it never completed repairs to the property. *See Buckley Towers*, 395 Fed.Appx. at 662. There is no record evidence to support that Plaintiff spent money in excess of the Policy's windstorm deductible to repair or replace damaged property either. In fact, the record evidence supports that Plaintiff has spent less than $100 to replace ceiling tiles. That amount is well-below the Policy's $25,317.00 windstorm deductible. Thus, Plaintiff's breach of contract claim based on an alleged failure to pay replacement cost benefits fails as a matter of law.

No jury could find that Ohio Security breached the Policy by failing to pay Plaintiff replacement cost benefits because Plaintiff has not completed the actual repairs or replacements of damaged property required for a replacement cost claim. As a matter of law, this Court should grant final summary judgment in favor of Ohio Security and find that Ohio Security did not breach the Policy.

WHEREFORE, Defendant Ohio Security Insurance Company respectfully requests that this Court enter final summary judgment in its favor.

BUTLER WEIHMULLER KATZ CRAIG LLP

s/ Paul Hudson Jones II
J. PABLO CÁCERES
Florida Bar No.: 131229
pcaceres@butler.legal
PAUL HUDSON JONES II
Florida Bar No.: 44290
hjones@butler.legal
Secondary: jmohammed@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
Attorneys for Defendant Ohio Security
Insurance Company

## CERTIFICATE OF SERVICE

I certify that on June 3, 2022, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send a Notice of Electronic Filing to the following:

Lynn Brauer
Florida Insurance Law Group, LLC
8724 Sunset Drive #260
Miami, Florida 33173
pleadings@flinslaw.com
lynn@flinslaw.com
Attorneys for Plaintiff

s/ Paul Hudson Jones II
PAUL HUDSON JONES II